NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0652n.06

No. 08-3469

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Sep 22, 2009**
LEONARD GREEN, Clerk

| | |
|---|---|
| SHIQIANG DONG, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) ON PETITION FOR REVIEW FROM A |
| | ) DECISION OF THE BOARD OF |
| ERIC H. HOLDER, JR., | ) IMMIGRATION APPEALS |
| Attorney General,* | ) |
| | ) |
| Respondent. | ) |

Before: NORRIS, and COLE, Circuit Judges; ADAMS,* District Judge.

JOHN R. ADAMS, District Judge. Shiqiang Dong, a native and citizen of China, petitions for review of the Board of Immigration Appeals ("the BIA" or "the Board")'s order denying his applications for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"). For the following reasons, we DENY the petition.

## I. Background

Petitioner left China in July 2003. He traveled to Hong Kong, then Cuba, and entered the United States from Mexico on August 27, 2003, with the help of smugglers. Within one year, he filed an application for asylum through counsel. Petitioner sought relief

---

*Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Eric H. Holder, Jr. has been substituted for former Attorney General Michael B. Mukasey as the respondent in this case.

**The Hon. John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

based on a claim that he had been persecuted under China's family-planning laws and was subject to future persecution on the same ground.

In his application, the petitioner stated that in 2002, at age 17, he began living in the city of Fuzhou with Chen Min Huei, his 16-year-old girlfriend. She became pregnant in February 2003. The pregnancy came to the attention of the local family planning office in May 2003. Min Huei was forced to have an abortion, and the couple was fined and ordered to attend an education camp. *(See* JA 256.)

Petitioner, who speaks Mandarin Chinese, appeared with counsel at the removal hearing. He averred before the Immigration Judge ("IJ") that he had reviewed his statements in the asylum application and that the statements were correct and "what [he] want[ed] to say." (JA 73-74) However, the petitioner testified (through an interpreter) before the IJ somewhat differently than what was set forth in his asylum application. Petitioner's testimony highlighted the fact that his application lacked significant detail.

Petitioner testified that he and Min Huei were married in a traditional Chinese ceremony on February 1, 2003. Her pregnancy was discovered in March 2003. Hoping to avoid the family-planning cadres, they decided to move. Before doing so, five family-planning personnel (two women and three men) came to their house. He, Min Huei, and his mother were all taken to the hospital, where Min Huei was forced to undergo an abortion. Petitioner testified that when he tried to hold Min Huei's hand, one of the officials hit him with a flashlight. He was then pushed to the ground and kicked in the jaw. Petitioner said that he suffered bone fractures in his hand and later required stitches in his jaw.

After the abortion, the petitioner decided that he had to leave China. He did not have money to pay the fine. Petitioner stated that he did not have money for Min Huei to travel with him, but also later stated that she did not accompany him because she was unable to obtain a passport.

In September 2003, the petitioner was served by the Department of Homeland Security with a Notice to Appear and charged with being inadmissible to the United States under 8 U.S.C. § 1182(a)(6)(A)(i), for being present without inspection. Petitioner conceded, through counsel, that he was removable as charged and filed an application for asylum and for withholding of removal on March 3, 2004. (JA 252-60)

After a hearing, the IJ issued an oral decision denying the applications on July 24, 2006. Consequently, the IJ ordered the petitioner removed to China. Oral Decision of the IJ (JA 25-39).

The IJ concluded that the petitioner's testimony on relevant and material facts was inconsistent with his application. In particular, she noted the difference between the initial statement that it was his girlfriend who was pregnant and the later assertion that they had been married in a traditional ceremony. The IJ also observed that the petitioner testified inconsistently regarding his broken jaw when he first stated that he had not required medical attention, but thereafter qualified his testimony stating that he had received five stitches. Petitioner stated in his asylum application that he had learned of Min Huei's pregnancy in February 2003, but he testified before the IJ that it was March 2003. His testimony was that at the time of marriage, he was 19 and she was 18. In fact, given his December 25, 1985-birthday, the petitioner would have been 17 at the time of the February

2003 marriage. He testified that he was following the lunar calendar. The IJ, however, found that the petitioner did not introduce evidence of that calculation.

The "major and significant inconsistency," according to the IJ, was that the petitioner omitted from his application the fact that he was struck on the hand and sustained a fractured jaw when he was kicked at the hospital. According to the IJ:

> The respondent in his application is asked specifically what harm or mistreatment was directed against him, who caused it, et cetera. Here, the respondent states merely that he was fined 5,000 RMB[1] and ordered to attend a special program for three months. Today, the respondent claims the family planning cadre members came to his mother's home where they were living, took all three of them to the hospital. He was struck on his hands with an electric flashlight with such severity that his bones were fracture[d], pushed to the floor, and then kicked in the jaw, and his jaw was broken. Nowhere in his application does the respondent mention this, and when on cross-examination asked why this was not mentioned, the respondent quite simply did not have any reconcilable statement as to why he failed to mention something as significant as his injuries. Respondent initially stated that he received no medical attention for his broken jaw on direct examination, and then stated he had five stitches placed in his jaw.

(JA 35)

The IJ also noted the absence of any corroboration. While the petitioner claimed to have given his attorney a letter from his spouse and pictures of the wedding, they were never submitted as evidence. He testified that Min Huei was in Japan and they had communicated on at least one occasion. (JA 85.)

The Department of Homeland Security ("DHS") submitted background information to the IJ suggesting that a coercive one-child policy was not strictly enforced in Fujian (the province in which the prefecture-level city of Fuzhou is located). One of the exhibits the

---

[1] In April 2009, 5,000 RMB was equivalent to approximately $730.00 U.S. dollars. *See* XE-2Universal Currency Converter at http://www.xe.com/ucc/.

government submitted, entitled "China: Profile of Asylum Claims and Country Conditions, June 2004," (JA 173-224), states: "According to the Fujian Provincial Family Planning Committee (FPFPC), there have been no cases of forced abortion . . . in Fujian in the last 10 years, but it is impossible to confirm this claim." (JA 195) Other articles suggest "rethinking of the one-child policy in China beginning at about the time period [the petitioner] was there." (JA 38)

On cross-examination, the petitioner declared that he had evidence in China that Min Huei was forced to have an abortion but, because his attorney had not asked for that evidence, he had not gotten it from China for submission. (JA 87) He further testified that his parents had not prepared an affidavit stating that he had a Chinese wedding because they are illiterate. (JA 88) Petitioner stated that his attorney had his wedding picture but, because the IJ had not asked for pictures, he had not submitted it to the Court. (JA 88, 94-95) Petitioner also testified that he had not paid the fine assessed by the family planning authorities, but had the notice "at [his] place." (JA 90, 94) Moreover, the petitioner claimed that he did not have documentation of his traditional marriage because his attorney had not asked for it, and that his attorney had the letter from his girlfriend. (JA 91, 93-94)

Petitioner, through counsel, appealed to the Board. On March 28, 2008, the BIA adopted and affirmed the decision of the IJ and dismissed the appeal of the IJ's order of removal. (JA 2) The Board was not convinced by the arguments advanced on appeal that the IJ's findings of fact, including her adverse credibility assessment, had been shown to be "clearly erroneous." *See* 8 C.F.R. § 1003.1(d)(3)(i). The BIA found significant the fact that the petitioner did not mention his fractured jaw in the application or submit any

corroborating evidence:

> We disagree with the respondent's argument on appeal that the record does not actually contain inconsistencies. The Immigration Judge noted that the respondent has not adequately explained the significant inconsistency between the respondent's asylum application and his testimony during the hearing. . . . The Immigration Judge further noted that the respondent had submitted absolutely no corroborating evidence for his claims other than his recollection of events. . . .

(JA 35)

This petition for review followed.

## II. Analysis

### A. *Standard of Review*

Where, as in this case, the BIA affirms the decision of the IJ and specifically adopts the particular reasoning of the IJ while supplementing that decision with comments of its own, we review the IJ's decision as supplemented by the Board. *Lazar v. Gonzales*, 500 F.3d 469, 474-75 (6th Cir. 2007). We must sustain a decision by the IJ denying asylum if that determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). As we have recognized, "[u]nder this deferential standard, we may not reverse the [IJ's] determination [as supplemented by the Board] simply because we would have decided the matter differently." *Koliada v. I.N.S.*, 259 F.3d 482, 486 (6th Cir. 2001). Rather, to overturn an IJ's ruling "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Elias-Zacarias*, 502 U.S. at 481 n. 1 (emphasis in original).

### B. *Merits*

Under 8 U.S.C. § 1158(b), the Secretary of Homeland Security or the Attorney

General has authority to grant asylum in his or her discretion to any alien who is a "refugee." *See also Chen v. Gonzalez*, 447 F.3d 468, 471-72 (6th Cir. 2006). A refugee is "any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself . . . of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). "[A] person who has been forced to abort a pregnancy . . . , or who has been persecuted . . . resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion." 8 U.S.C. § 1101(a)(42)(B).

The burden of proof is on the applicant in an asylum proceeding to establish that he is a refugee. 8 U.S.C. § 1158(b)(1)(B)(i); 8 C.F.R. § 1208.13(a). An applicant can meet his burden through testimony alone without having to submit corroboration, so long as his testimony is credible. 8 C.F.R. § 1208.13(a); *Mapouya v. Gonzales*, 487 F.3d 396, 406 (6th Cir. 2007). The applicant must show that he has suffered persecution in the past or has a well-founded fear of future persecution should he return to his native country. 8 C.F.R. § 1208.13(a); *see also Mikhailevitch v. I.N.S.*, 146 F.3d 384, 389 (6th Cir. 1998). Even if the applicant establishes that he is a refugee within the meaning of the statute, he must also show that he merits a favorable exercise of discretion by the Secretary of Homeland Security or the Attorney General. *Kaba v. Mukasey*, 546 F.3d 741, 747 (6th Cir. 2008) (noting the Court's two-step inquiry).

Pursuant to 8 U.S.C. § 1231(b)(3)(A), removal to a particular country will be withheld

"if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." In order to prevail on his petition, the petitioner "must show that there is a 'clear probability' that []he would be subject to persecution." *Fang Huang v. Mukasey*, 523 F.3d 640, 651 (6th Cir. 2008) (quoting *Kouljinski v. Keisler*, 505 F.3d 534, 544 (6th Cir. 2007)). Because this standard is higher than that governing eligibility for asylum, an alien who has failed to establish a well-founded fear of persecution for asylum purposes is necessarily ineligible for withholding of removal. *Kaba*, 546 F.3d at 751.

An alien may qualify for protection under the CAT if he establishes that "it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Although an alien need not show that the torture be "on account of" a protected ground as is required for asylum or withholding of removal, the alien's burden of proof is higher than asylum and instead matches the burden associated with withholding of removal. *See Kaba*, 546 F.3d at 751. An alien will not be able to meet his burden of proof for protection under the CAT if his claim for such protection has the same factual predicate as his asylum and withholding of removal claims and he has not met his burden of proof for those forms of relief. *See, e.g., id.* (citing *Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005)).

Petitioner argues generally that the credibility determination of the IJ as supplemented by the Board was in error. The argument to overcome the conclusions of the Board and the IJ is not made particularly forcefully, and the petitioner does not cite to specific testimony. Furthermore, he does not cite to specific evidence that was overlooked.

The court agrees with the IJ and the Board that petitioner's application does not include crucial elements of the events on which he relies for relief.

An IJ's adverse credibility finding is reviewed under the deferential substantial evidence standard. *Kaba*, 546 F.3d at 748. It must be based upon issues "that go to the heart of the applicant's claim." *Chen*, 447 F.3d at 472 (quoting *Sylla v. I.N.S.*, 388 F.3d 924, 926 (6th Cir. 2004)). Here, the IJ determined that the petitioner was not credible in large part because of the discrepancies between his asylum application and his oral testimony. *See Amir v. Gonzales*, 467 F.3d 921, 925 (6th Cir. 2006) (basing an adverse credibility finding on a comparison of the petitioner's testimony with the statements made in his asylum application); *Kaba*, 546 F.3d at 749-50 (upholding an adverse credibility finding where the asylum application did not reference the type of testimonial assertions later made). As in *Amir*, the court concludes that any reasonable judge would not be compelled to reach a contrary conclusion from the one reached here by the IJ and affirmed by the Board. Thus, the IJ's credibility finding was supported by substantial evidence.

We also conclude the IJ and the Board reasonably decided that there were inconsistencies between the petitioner's asylum application and testimony, and within his testimony. With the exception of the inconsistency between the petitioner's application and testimony regarding his age at the time of the relevant events, these inconsistencies are substantial evidence in support of the adverse-credibility determinations. Moreover, the background information submitted by the DHS provides a basis for objective skepticism of the petitioner's claims.

In the absence of credible testimony, the IJ determined that the petitioner had not

satisfied his evidentiary burden. To counter the credibility questions raised by the inconsistencies between his application and oral testimony, the petitioner could have rehabilitated his claims with corroborative evidence. *See Pilica v. Ashcroft*, 388 F.3d 941, 954 (6th Cir. 2004) ("Because [the petitioner's] testimony plausibly could be viewed as incredible, and certainly could be viewed as inconsistent or incoherent, a fact finder reasonably could find that [the petitioner's] testimony, absent corroboration, was insufficient to meet his burden of proof.") Because the IJ's adverse credibility determination, which was adopted by the BIA, is entitled to deference, the petitioner's oral testimony does not suffice, and the IJ was therefore entitled to consider the lack of supporting evidence.

Petitioner utterly failed to rehabilitate his claims with corroboration. He did not offer any medical documentation of his alleged physical injuries or of Min Huei's abortion. Nor did he offer evidence of his traditional marriage, the existence of his girlfriend, or the imposition of the 5,000 RMB fine and mandatory special program attendance. Moreover, he failed to offer even background information indicating that coercive population control measures were implemented in Fuzhou City. In light of the petitioner's questionable testimony, the IJ appropriately found his failure to submit any corroborating evidence to greatly undermine his credibility. *See Zhao v. Holder*, 569 F.3d 238, 249 (6th Cir. 2009) (holding that the IJ properly focused on an incredible petitioner's failure to provide corroborating evidence).

Because the petitioner's claims for withholding of removal and for protection under the CAT rest on the same factual basis as his asylum claim, the IJ's adverse credibility

finding renders the petitioner ineligible for asylum, withholding of removal, and protection

under the CAT.  *See Kaba*, 546 F.3d at 751.

### III. Conclusion

For these reasons, we DENY the petition for review.