NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0313n.06

Case No. 22-3983

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jul 13, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| XUEWEN WU, | ) | |
| Petitioner, | ) | |
|  | ) | |
|  | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
|  | ) | BOARD OF IMMIGRATION |
| MERRICK B. GARLAND, Attorney General, | ) | APPEALS |
| Respondent. | ) | |
|  | ) | O P I N I O N |
|  | ) | |

Before: COLE, CLAY, and KETHLEDGE, Circuit Judges.

COLE, Circuit Judge. Xuewen Wu seeks review of a final order from the Board of Immigration Appeals (BIA) affirming the Immigration Judge's (IJ's) denial of her applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Because there is substantial evidence in the record to uphold the IJ's and BIA's adverse credibility finding, we deny the petition for review.

## I. BACKGROUND

Wu is a native and citizen of China. She was admitted into the United States on January 15, 2009, on a B-2 nonimmigrant visa that authorized her to remain in the United States until July 14, 2009. She applied for asylum and withholding of removal after her visa expired. The Department of Homeland Security then served Wu with a notice to appear, charging her as removable under 8 U.S.C. § 1227(a)(1)(B) for overstaying her visa. Wu conceded her

removability at her first appearance before the IJ, where she also indicated that in addition to pursuing asylum and withholding of removal, she was also pursuing protection under CAT.

Wu testified to the following. Wu lived in China with her husband and her daughter. Under China's one-child policy in place at the time, Wu had a form of birth control, an intrauterine device (IUD), inserted after the birth of her first child. Yet despite the IUD's presence, she became pregnant again, and a government official ordered her to undergo an abortion and provide proof of the procedure.

There was a disagreement within Wu's family as to how she could avoid the abortion, specifically whether she should hide with her husband's aunt or with her parents. While at work the day she planned to ask for a one-year sabbatical, with the goal of hiding her pregnancy, the government official approached Wu and asked if Wu had obtained the abortion yet; when Wu responded she had not, she was taken to a hospital to undergo a painful and traumatic abortion procedure against her will. A month later, Wu was forced to have another IUD inserted. Realizing that she could never have more children in China, and suffering from physical and mental pain, Wu decided to enter the United States.

Wu testified that she and her husband, who came to the United States after Wu, wanted to have more children and attempted to do so while in the United States. Roughly three years after entering the country, Wu went to a doctor to have her IUD removed, but the doctor was unable to do so that day because Wu was menstruating. Wu did not have her IUD removed at any later date. Wu also saw another doctor who suggested that due to Wu's age and history, it would be safer for her to have a "test tube baby," meaning pregnancy achieved through in vitro fertilization. She did not have a doctor's report from this appointment. Ultimately, Wu and her husband did not proceed down this path because the process was cost prohibitive.

On cross-examination, Wu testified that when her husband came to the United States on September 16, 2011, he did not want to have more children. She clarified that she was unable to have children once she moved to the United States because she had not removed her IUD, her husband did not want to have children, and the couple rarely spent time together because of their work.

Wu's husband returned to China around June 6, 2017, though she did not have any proof of his departure. She testified that she wanted to return to China with her husband. Conversely, a letter from Wu's husband indicates that she had never planned on returning to China with him. Wu testified that she ultimately did not leave the United States because a few months after his departure, her husband sent her a letter requesting a divorce. Wu attempted to call her husband after she received the letter but learned that he had disappeared, and no one was able to locate him. By the time of the first merits hearing on May 21, 2018, Wu had learned that her husband had been detained by the government. Even though the family had hired an attorney in China, the attorney was unable to find Wu's husband. Wu also testified that she still hopes to have more children.

The IJ inquired whether Wu had an original certificate of the abortion, since all that was in the record was a copy. Wu had testified that the hospital issued the abortion certificate in triplicate—one for the hospital, one for the government, and one for Wu. She said the original given to her was probably at her home. The IJ then spoke about the importance of the authenticity of the abortion certificate, because whether or not Wu was subjected to a forced abortion was the key issue in the case. The IJ therefore directed Wu to submit the original document for forensic testing.

Wu submitted supplemental evidence, which was reviewed at the next hearing four months later. Wu testified that she was unable to find the original abortion certificate either at her home

in the United States or at her home in China, where her daughter attempted to find the document. Instead, Wu's daughter took the copy Wu had to the hospital, which provided a letter to the effect that the copy was indeed a copy of the original and verified with archival records that an abortion had taken place on that date. The forensic lab was unable to confirm the legitimacy, or illegitimacy, of either the copy of the abortion certificate or the copy of the hospital certification.

At the second hearing, Wu again testified regarding her husband's arrest and disappearance. The IJ inquired into whether Wu had a letter from the attorney in China testifying to the husband's disappearance, noting the importance of this evidence because Wu's husband was the only live witness who could have testified on her behalf and corroborated her testimony. Wu testified that she was unable to because she only received this information shortly before the hearing, because she and her family had only recently hired an attorney and found out about the arrest.

The IJ released a written decision denying Wu all forms of relief, making an adverse credibility finding and also noting that Wu had not met her burden of corroborating her claims. The adverse credibility finding was based on internal inconsistencies in Wu's testimony, including her desire to have another child; the documentary evidence, specifically Wu's inability to produce the original abortion certificate and the letter from the attorney in China regarding Wu's husband's detention; the implausibility of her testimony; and her demeanor throughout the proceedings. The IJ then noted that despite Wu's lack of credibility, she could still prevail by appropriately corroborating her claims, but found she had failed to do so. Here, the IJ focused on the lack of original documents regarding the abortion, lack of evidence regarding the forced nature of the abortion, lack of evidence regarding her husband's return to China and subsequent detention, and additional inconsistencies in letters from interested family members and medical records.

Wu appealed the decision to the BIA, which affirmed the IJ's adverse credibility determination as not clearly erroneous and therefore affirmed the denial of relief. The BIA explicitly did not rely on the IJ's finding regarding the plausibility of Wu's testimony and Wu's demeanor, but rather solely on the inconsistencies within the testimony and documentary evidence. The BIA also affirmed the IJ's finding that Wu failed to corroborate her claim, holding that the IJ did not err in giving the abortion certificate and hospital certification diminished weight; that the IJ did not err in giving diminished weight to letters and affidavits from Wu's family; and that there was no corroborating evidence that the abortion was forced, that her husband actually left for China, and that her husband was arrested. Wu timely appealed the BIA's decision.

## II. ANALYSIS

### A. Standard of Review

We review the BIA's decision as the final agency determination, but also review the IJ's reasoning to the extent the BIA adopted such reasoning. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). We review the IJ's and BIA's factual findings under the substantial evidence standard. *Marouf v. Lynch*, 811 F.3d 174, 180 (6th Cir. 2016). A credibility finding is a finding of fact subject to "this highly deferential standard." *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004). Factual findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Even when the IJ's and BIA's "adverse credibility determination can be questioned in some respects," there may still be substantial evidence in the record to support the adverse finding. *El-Moussa v. Holder*, 569 F.3d 250, 256 (6th Cir. 2009). "Though this standard offers broad discretion to administrative fact finders, that discretion is not limitless." *Marouf*, 811 F.3d at 182. Nevertheless, "[a] reviewing court should

not reverse simply because it is convinced that it would have decided the case differently."

*Marikasi v. Lynch*, 840 F.3d 281, 287 (6th Cir. 2016) (quotation marks and citation omitted).

**B.  Credibility Determination**

Prior to examining a noncitizen's statutory eligibility for relief, the IJ must make a

"threshold showing of credibility[.]"  *Zhao v. Holder*, 569 F.3d 238, 249 (6th Cir. 2009).  "The

testimony of the applicant may be sufficient to sustain the applicant's burden without

corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is

credible" and persuasive.  8 U.S.C. § 1158(b)(1)(B)(ii).  The totality of the circumstances approach

applies to the IJ's credibility determination.  *El-Moussa*, 569 F.3d at 256.  The IJ may take into

account:

> the demeanor, candor, or responsiveness of the applicant or witness, the inherent
> plausibility of the applicant's or witness's account, the consistency between the
> applicant's or witness's written and oral statements (whenever made and whether
> or not under oath, and considering the circumstances under which the statements
> were made), the internal consistency of each such statement, the consistency of
> such statements with other evidence of record (including the reports of the
> Department of State on country conditions), and any inaccuracies or falsehoods in
> such statements, without regard to whether an inconsistency, inaccuracy, or
> falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii).  This standard applies to all three forms of relief Wu seeks.  *Slyusar*

*v. Holder*, 740 F.3d 1068, 1072 (6th Cir. 2014).

The IJ identified several inconsistencies in making the adverse credibility finding, which

the BIA affirmed.  The IJ and BIA pointed to "discrepancies" regarding Wu's intention to have a

second child and return to China.  Wu testified and provided affidavits that she and her husband

always wanted a second child, but also testified that she did not see a doctor about removing her

IUD for roughly three years after entering the country and never had the IUD taken out;

additionally, while she claims the in vitro fertilization process was cost prohibitive, she also

testified that her and her husband decided not to pursue the option because they were often separated and her husband did not want more children. She also stated she had wanted to return to China with her husband and only his letter requesting a divorce stopped her, but in the same letter the husband noted that he had asked Wu to return with him and she had refused due to her continued fear of living in China.

There is substantial evidence in the record to support the IJ's and BIA's adverse credibility finding based on the noted inconsistencies. And whether we could, or even would, make an alternate finding on credibility based on these facts, we may only reverse the BIA if the record *compels* a different outcome. 8 U.S.C. § 1252(b)(4)(B); *see Marikasi*, 840 F.3d at 287. That is not the case here. *See, e.g.*, *Dong v. Holder*, 345 F. App'x 965, 970 (6th Cir. 2009) (upholding an adverse credibility finding based on inconsistencies between record evidence and Dong's testimony, as well as within Dong's testimony).

Wu argues that there is not substantial evidence to support her adverse credibility finding because the finding was "based on minor inconsistencies or discrepancies that did not go to the heart of the claim[.]" (Petitioner Br. 14.) But Wu relies on an outdated standard that is inapplicable to her case. For applications submitted on or after May 11, 2005, like Wu's, the IJ may take into account any inconsistency, inaccuracy, or falsehood, "*without regard* to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim[.]" 8 U.S.C. § 1158(b)(1)(B)(iii) (emphasis added). So her objection is immaterial.

Wu also challenges the IJ's reliance on the implausibility of the testimony and Wu's demeanor in making the adverse credibility finding. But the BIA explicitly held that it "d[id] not rely on any factors cited by the Immigration Judge in support of her adverse credibility determination that are not discussed above," and the BIA did not discuss the plausibility and

demeanor issues. (A.R. 3 n.2.) Those grounds are therefore not before us on review. *See Turcios-Flores v. Garland*, 67 F.4th 347, 353 (6th Cir. 2023) ("It follows that any issues the Board did not address are not before the court.").

The IJ additionally found, and the BIA affirmed, that "[w]hile [Wu] provided documentary evidence that corroborates some aspects of her claim, it additionally highlights [Wu's] lack of credibility." (A.R. 84.) If an IJ finds that an applicant is not credible and she fails to submit appropriate corroboration, then the applicant may fall below the burden of proof. *Pilica v. Ashcroft*, 388 F.3d 941, 954 (6th Cir. 2004); *see also Zhao*, 569 F.3d at 248–49 ("The IJ properly focused on Zhao's failure to provide corroborating evidence, especially where his testimony was riddled with inconsistencies."). But corroborating evidence "must be provided only if it is of the type that would normally be created or available in the particular country and is accessible to the [noncitizen], such as through friends, relatives, or co-workers." *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004) (quotation marks and citation omitted). "A reviewing court may not reverse an agency finding as to the availability of corroborating evidence unless the court finds a reasonable trier of fact would be compelled to conclude that such evidence is unavailable." *Fisenko v. Holder*, 336 F. App'x 504, 510 (6th Cir. 2009) (citing 8 U.S.C. § 1252(b)(4)).

Here, the IJ focused primarily on the issues surrounding the copy of the abortion certificate, as well as the fact that even if the document were legitimate, nothing in the document—or elsewhere in the record—proved the abortion was forced. The IJ therefore gave the abortion certificate and hospital certification low weight, a finding the BIA affirmed. Second, the IJ found that Wu's inability to corroborate her husband's location was particularly detrimental because the husband was the only other individual capable of testifying with personal knowledge regarding the abortion certificate and the forced nature of the abortion. And though Wu testified she was

unable to procure such corroboration because of a lack of time, she had also testified four months previously that she was aware her husband was missing and had hired an attorney in China, contradicting her timeline. The lack of corroboration regarding the abortion and her husband's whereabouts was particularly damaging to Wu's case because she was aware at the conclusion of the first merits hearing that her case was contested and her credibility was in question, and the purpose of the second merits hearing was to give Wu an opportunity to provide corroborating evidence to counteract her credibility issues.

Wu argues that the type of evidence the IJ required—the original abortion certificate—was not available to Wu and she instead provided a reasonable explanation for her inability to obtain it and did present a copy of the hospital certification along with the copy of the abortion certificate. But the IJ found Wu's testimony regarding the inability to obtain abortion and hospital certifications capable of authentication incredible. For instance, the IJ specifically identified Wu's testimony about her due diligence in obtaining the abortion certificate and the letter from her husband's attorney in China as notable inconsistencies in making her adverse credibility finding.

So long as there is "*some* evidence to support the adverse credibility determination," then we must "conclude the evidentiary record *does not compel* a contrary result." *Vasha v. Gonzales*, 410 F.3d 863, 871–72 (6th Cir. 2005) (emphasis added). There is substantial evidence in the record to support the IJ's and BIA's holding that Wu had failed to present corroborating evidence capable of rehabilitating her inconsistent testimony and meet her burden of proof. *See Zhao*, 569 F.3d at 249 (finding that the numerous inconsistencies at issue, along with a lack of corroborating evidence, establishes substantial evidence to support an adverse credibility determination).

"An adverse credibility determination is fatal to claims for asylum and relief from removal, preventing such claims from being considered on their merits." *Slyusar*, 740 F.3d at 1072. Because we affirm the IJ's and BIA's adverse credibility finding, Wu's petition for review fails.

## III. CONCLUSION

For the foregoing reasons, we deny Wu's petition for review.