NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0545n.06

No. 17-3298

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Oct 02, 2017
DEBORAH S. HUNT, Clerk

JACKLINE JEBET KORIR,          )
          )
      **Petitioner,**          )      ON PETITION FOR REVIEW
          )      OF A FINAL ORDER OF THE
v.          )      BOARD OF IMMIGRATION
          )      APPEALS
JEFFERSON B. SESSIONS, III, U.S. Attorney )
General,          )
          )      **OPINION**
      **Respondent.**          )
          )

**Before: MOORE, WHITE, and DONALD, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** Jackline Jebet Korir entered the United States from Kenya in June 2009 on a student visa. She was served with a Notice to Appear in September 2012 for failing to abide by the conditions of her nonimmigrant status. Subsequently, the Department of Homeland Security ("DHS") lodged two additional charges against Korir stemming from her conviction for falsely representing herself to be a U.S. citizen, in violation of 18 U.S.C. § 1015(e). Korir conceded removability and filed an application for withholding of removal or protection under the Convention Against Torture ("CAT"), claiming that she would be subject to female genital mutilation ("FGM") and a forced arranged marriage if she were removed to Kenya.

The Immigration Judge ("IJ") found that Korir was not credible and denied her application for withholding of removal or relief under the CAT. The Board of Immigration

Appeals ("BIA") affirmed the denial on appeal. After reviewing the record, we conclude that the IJ's adverse credibility finding is supported by substantial evidence and thus Korir cannot satisfy her burden of proof for withholding of removal or protection under the CAT. We therefore **DENY** Korir's petition for review.

## I. BACKGROUND

Korir, a citizen of Kenya, was admitted to the United States in June 2009 as a nonimmigrant student in order to attend Lansing Community College in Lansing, Michigan. Administrative Record ("A.R.") at 775 (Notice to Appear at 1). She failed to enroll at the college from August 2011 onward and the DHS issued a Notice to Appear on September 6, 2012. *Id.* The DHS charged that Korir was subject to removal, pursuant to 8 U.S.C. § 1227(a)(1)(C)(i), because she "failed to maintain or comply with the conditions of the nonimmigrant status under which [she was] admitted." *Id.* at 777 (Notice to Appear at 3).

On January 17, 2013, Korir pleaded guilty to knowingly making a false statement that she was a citizen or national of the United States with the intent to engage unlawfully in employment in the United States in violation of 18 U.S.C. § 1015(e). *Id.* at 717 (Judgment in a Criminal Case at 1). The district court sentenced her to probation for a term of one year. *Id.* at 718 (Judgment in a Criminal Case at 2). The DHS subsequently lodged two additional charges against Korir: (1) removability under 8 U.S.C. § 1227(a)(3)(D) for falsely representing herself to be a citizen of the United States; and (2) removability under 8 U.S.C. § 1227(a)(2)(A)(i) because Korir had been convicted of a crime involving moral turpitude. *Id.* at 779 (April 12, 2013 Additional

Charges of Inadmissibility/Deportability at 1); *id.* at 781 (December 4, 2015 Additional Charges of Inadmissibility/Deportability at 1). The crime of moral turpitude was the January 2013 conviction for violating 18 U.S.C. § 1015(e). *Id.* at 781 (December 4, 2015 Additional Charges of Inadmissibility/Deportability at 1).

Over the course of a series of hearings, the IJ determined that Korir was removable under 8 U.S.C. § 1227(a)(1)(C)(i) and 8 U.S.C. § 1227(a)(3)(D). *Id.* at 514 (Removal Proceeding Tr. at 49). Korir conceded the third charge—that she was removable under 8 U.S.C. § 1227(a)(2)(A)(i)—and filed an application for withholding of removal and protection under the CAT. *Id.*; *id.* at 624–716 (Resp't App. for Withholding of Removal). Her submission consisted of the I-589 application form and the 2014 U.S. Department of State Country Report on Human Rights Practices for Kenya. *Id.* The crux of Korir's application was her claim that she would be subject to FGM and potentially a forced arranged marriage if she was removed. *Id.* at 631 (Resp't App. for Withholding of Removal, I-589 at 5).

On April 12, 2016, the IJ began the hearing on Korir's application for withholding. *Id.* at 523 (Removal Proceeding Tr. at 57). At the hearing, Korir conceded that she was ineligible for asylum because she had not filed within one year of her arrival in the United States, pursuant to 8 U.S.C. § 1158(a)(2)(B). *Id.* Besides her application, the only evidence Korir presented at this hearing was her testimony. *Id.* at 529–62 (Removal Proceeding Tr. at 63–96). Korir testified that she was afraid to return to Kenya because her father would have her circumcised. *Id.* at 532–33 (Removal Proceeding Tr. at 66–67). According to Korir, her sister has escaped FGM

3

only by agreeing to get married, although her mother, her aunts and two childhood friends had all endured circumcision. *Id.* at 532, 537 (Removal Proceeding Tr. at 66, 91). Korir showed the IJ scars on her legs that she stated her father made with a heated nail to prevent her from wearing short skirts. *Id.* at 534–35 (Removal Proceeding Tr. at 68–69). Korir explained that she had not applied for asylum when she first entered the United States because she had not thought she would be returning to Kenya and was afraid. *Id.* at 536 (Removal Proceeding Tr. at 71).

Korir also expressed concern that her young son would be circumcised without anesthetic if she returned with him to Kenya. *Id.* at 534 (Removal Proceeding Tr. at 68). Korir did admit, however, that she had sent her son to live with her parents in Kenya for some period of time. *Id.* at 541 (Removal Proceeding Tr. at 75). Her son's father—Korir's ex-husband and a U.S. citizen—had submitted a Petition for Alien Relative for Korir while the two were still married, but had withdrawn the petition after his interview with U.S. Citizenship and Immigration Services. *Id.* at 550–51 (Removal Proceeding Tr. at 84–85).

The IJ granted a continuance to allow Korir to "provid[e] some corroboration." *Id.* at 565 (Removal Proceeding Tr. at 99). At the continued removal hearing on May 4, 2016, Korir presented the following supporting documentation: (1) a personal statement, *id.* at 606–08 (Resp't Ex. List); (2) a letter from her mother, *id.* at 611–12 (Resp't Ex. List); (3) a letter from her sister, *id.* at 614–15 (Resp't Ex. List); and (4) a letter from her brother, *id.* at 617 (Resp't Ex. List). The personal statement and letters all described the role FGM played in the Kalenjin community of which Korir is a part. *Id.* at 603–17 (Resp't Ex. List). Additionally, Korir's

mother and brother stated that Korir's father had arranged a marriage for her with a man whose two current wives had both undergone FGM prior to their marriages. *Id.* at 611, 617 (Resp't Ex. List).

Korir testified at the continued removal hearing about the corroborating evidence she had submitted. *Id.* at 574–91 (Removal Proceeding Tr. at 107–24). The IJ questioned Korir about why she had not mentioned the specific arrangements for her marriage at the previous hearing. *Id.* at 585 (Removal Proceeding Tr. at 118). Korir admitted that she had known about this arrangement since November 2015, but contested the IJ's assertion that she had failed to mention it in her prior testimony. *Id.* at 586 (Removal Proceeding Tr. at 119).

The IJ then rendered an oral decision; the IJ denied Korir's application for withholding of removal and for relief under the CAT and ordered that she be removed to Kenya. *Id.* at 448 (IJ Dec. at 8). The IJ found that Korir was not credible. *Id.* at 446 (IJ Dec. at 6). Furthermore, the IJ found that Korir did not meet her burden of proof for withholding of removal or protection under the CAT. *Id.* at 448 (IJ Dec. at 8).

Korir appealed the IJ's decision to the BIA. On March 1, 2017, the BIA dismissed her appeal. *Id.* at 5 (BIA Dec. at 3). It held, first, that the IJ's adverse credibility finding was not clearly erroneous. *Id.* at 3–4 (BIA Dec. at 1–2). Secondly, the BIA affirmed the IJ's denial of withholding of removal and protection under the CAT because the adverse credibility determination prevented Korir from meeting her burden of proof; consequently, the BIA did not

reach the merits of Korir's claims. *Id.* at 4 (BIA Dec. at 2). Finally, the BIA rejected Korir's claim that the IJ was biased against her as without merit. *Id.*

Korir then timely filed this petition for review, contesting only the first two holdings of the BIA. Pet. for Review 1, ECF No. 1; Pet'r Br. at 6–8. Simultaneously, she filed a motion to stay removal. Mot. to Stay Removal, ECF No. 5. On June 16, 2017, we denied Korir's motion to stay. Order Denying Mot. to Stay Removal, ECF No. 13.

## II. DISCUSSION

### A. Standard of Review

Where, as in this case, "the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). "[W]e are also empowered to review the IJ's opinion to the extent that the BIA adopts that opinion." *Marikasi v. Lynch*, 840 F.3d 281, 287 (6th Cir. 2016) (quoting *Gaye v. Lynch*, 788 F.3d 519, 526 (6th Cir. 2015)). "The agency's findings of fact are reviewed for substantial evidence, and questions of law are reviewed de novo." *Abdurakhmanov v. Holder*, 735 F.3d 341, 345 (6th Cir. 2012).

Credibility determinations are findings of fact and thus we review them under the substantial evidence standard. *Marikasi*, 840 F.3d at 287. "This is a deferential standard: A reviewing court should not reverse simply because it is convinced that it would have decided the case differently." *Id.* (quoting *Sylla v. I.N.S.*, 338 F.3d 924, 925 (6th Cir. 2004)). Rather, "[w]e

will reverse a credibility determination only if any reasonable adjudicator would be compelled to conclude to the contrary." *Hachem v. Holder*, 656 F.3d 430, 434 (6th Cir. 2011); 8 U.S.C. § 1252(b)(4)(B).

## B. Adverse Credibility Determination

"Considering the totality of the circumstances and all relevant factors," the IJ's credibility determination may be based on:

> the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements[,] . . . the internal consistency of each such statement, the consistency of such statements with other evidence of record[,] . . . and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii). This standard grants broad discretion to the IJ, but "[i]t does not . . . permit a judge to cherry pick facts or inconsistencies to support an adverse credibility finding that is unsupported by the record as a whole." *Marouf v. Lynch*, 811 F.3d 174, 182 (6th Cir. 2016) (omission in original) (quoting *Ilunga v. Holder*, 777 F.3d 199, 207 (4th Cir. 2015)). Rather, the IJ "must consider the petitioner's explanation for any inconsistency to verify that an inconsistency actually exists, and then evaluate whether the discrepancy renders the entire testimony incredible in light of the record as a whole." *Id.* (quoting *Ilunga*, 777 F.3d at 207).

Here, Korir makes three arguments as to why the IJ's adverse credibility determination— and the BIA's affirmation of that determination—is wrong; each argument attacks one of the underlying inconsistencies to which the BIA pointed when reviewing the IJ's decision. First, Korir argues that the IJ was incorrect in concluding that the difference between the statement in

her application that her sister underwent FGM and her testimony at her hearing that neither of her sisters had been circumcised constituted an inconsistency. Pet'r Br. at 9. Second, Korir claims that the IJ was unduly demanding in the amount of information that Korir had to provide because the IJ found her incredible when she could name only two peers who had undergone FGM after testifying that it was a common practice in her tribe. *Id.* at 11. Finally, Korir argues that the IJ and BIA were mistaken about when Korir first addressed the possibility of an arranged marriage. *Id.* at 12. All of these arguments fail because none demonstrates that a reasonable adjudicator would be compelled to reach the opposite conclusion from the BIA and the IJ. *See Hachem*, 656 F.3d at 434; 8 U.S.C. § 1252(b)(4)(B).

Korir first argues that there was no inconsistency between her petition for withholding removal and her later testimony on the issue of her sister's circumcision. Pet'r Br. 9. Instead, she claims that she was trying to "provide the Court with the most updated information with regards to her application and as such [this] should not be the basis for an adverse credible [sic] finding." *Id.* at 9–10. In her application, Korir wrote: "My sister, primary school friend and neighbor were circumcised married off [sic] to old men who paid dowry." A.R. at 631 (Resp't App. for Withholding of Removal, I-589 at 5). At her hearing on April 12, 2016, however, Korir stated that her sister: "really almost got, almost like literally circumcised but like she agreed to get married off so my father who didn't like circumcise her and she was married at a, at an young age. She has three children right now and she's just like 23 years old." *Id.* at 532 (Removal Proceeding Tr. at 66). Korir now claims that when she filed her application she believed her

8

sister had undergone FGM but "[a]t a much later point but prior to her April 12, 2016 hearing [she] gained knowledge that her sister was married off in lieu of circumcision." Pet'r Br. at 6.

While this is theoretically a viable explanation for why this is not an inconsistency, and instead an attempt to be transparent with the IJ, the timeline of events supports the IJ's determination that there is an inconsistency between Korir's written and oral statements. Korir signed her application for withholding of removal on January 12, 2016. A.R. at 635 (Resp't App. for Withholding of Removal, I-589 at 9.). She then testified on April 12, 2016 about her sister's marriage. *Id.* at 523, 532 (Removal Proceeding Tr. at 57, 66). Given that Korir testified she was in regular contact with her family, including her sisters, *id.* at 538–39 (Removal Proceeding Tr. at 72–73), it is implausible that she only learned her sister had not undergone FGM, but was instead married off and had three children, in the three months between the date of her application and her hearing.

Korir secondly argues that the IJ improperly found that it was inconsistent for her to testify that FGM is a common practice in her tribe and then to be able to name only two peers who had been circumcised. Pet'r Br. at 11. Korir contends that it is unrealistic for her to be expected to know the name of every woman in her tribe who has undergone FGM and that her testimony about the prevalence of FGM is supported by the 2014 U.S. Department of State Country Report on Human Rights Practices for Kenya, which she submitted with her application for withholding. *Id.* Korir mischaracterizes the IJ's analysis of the discrepancy in her testimony. The IJ did not indicate that Korir was required to name every woman in her tribe who had been

circumcised; rather, the IJ found it incredible that if the practice was so prevalent, Korir could name only two peers who had undergone it. A.R. at 446 (IJ Dec. at 6). Korir is correct, however, to highlight the fact that the 2014 U.S. Department of State Country Report on Human Rights Practices for Kenya does support her oral testimony. The report states that FGM is still widely practiced and that among the Kalenjin, Korir's ethnic group, the rate of FGM among women is forty-eight percent. *Id.* at 694 (Resp't App. for Withholding of Removal, Country Report at 55).

Lastly, Korir argues that the IJ and BIA erroneously found an inconsistency in her testimony because they both were mistaken regarding when she first addressed the possibility of an arranged marriage. Pet'r Br. at 12. As the government points out, Resp't Br. at 25, the IJ's adverse credibility determination did not rest on the belief that Korir had failed to mention the possibility of an arranged marriage prior to her May 4, 2016 testimony. Rather, the IJ found Korir incredible because she did not mention until the May 2016 hearing that her father had entered into a specific arrangement regarding her upcoming marriage, despite apparently knowing about these specific plans since November 2015. Furthermore, Korir was unable to explain why she had not mentioned these definite plans in her earlier testimony or written submissions. A.R. at 581 (Removal Proceeding Tr. at 114). Indeed, as the IJ noted, that Korir submitted a personal statement that did not discuss the potential for an arranged marriage at all, let alone her father's definitive arrangements, undermined her credibility about the reason she fears returning to Kenya. *Id.* at 446 (IJ Dec. at 6); *id.* at 606–08 (Korir Decl.).

In light of the record and deferential standard of review, all of Korir's arguments about why the IJ and BIA were incorrect in making an adverse credibility determination must fail. Because there are significant inconsistencies in Korir's oral and written statements, under the totality of the circumstances any reasonable adjudicator would not be compelled to conclude to the contrary of the IJ and BIA. *See* 8 U.S.C. § 1252(b)(4)(B). Therefore, we hold that the adverse credibility determination is supported by substantial evidence.

## C. Withholding of Removal and Relief Under the CAT

"An adverse credibility determination is fatal to claims for asylum and relief from removal, preventing such claims from being considered on their merits." *Slyusar v. Holder*, 740 F.3d 1068, 1072 (6th Cir. 2014). Because "[f]acts relevant to credibility determinations regarding applications for withholding under the [Immigration and Nationality] Act and the CAT are reviewed under the same standard," if an applicant fails to "satisfy the threshold showing of credibility to warrant withholding of removal under the Act, it logically follows that he cannot demonstrate that he is entitled to relief under the CAT." *Zhao Shan Sheng v. Holder*, 569 F.3d 238, 249 (6th Cir. 2009). Thus, if the IJ finds that an applicant is incredible, and there is no independent persuasive evidence, this "necessarily disposes" of his application of withholding of removal and protection under the CAT. *Slyusar*, 740 F.3d at 1074.

Korir argues that the BIA erroneously concluded she had not met her burden of proof for withholding of removal and relief under the CAT and points to the merits of her claim. Pet'r Br. at 13–15. The BIA's decision, however, affirmed the IJ's denial of withholding of removal and

protection under the CAT on the basis that the IJ's adverse credibility finding precluded Korir from meeting her burden. A.R. at 4 (BIA Dec. at 2). Consequently, the BIA did not reach the merits of Korir's claim. *Id.*

Because the record supports the IJ's adverse credibility finding, as discussed above in Section II.B, and the BIA affirmed the IJ's denial of withholding of removal and protection under the CAT on the basis of this finding, we deny Korir's petition for review. We do so without addressing the merits of her claim. *See Matovski v. Gonzales*, 492 F.3d 722, 740 (6th Cir. 2007) (holding that an issue not reviewed on the merits by the BIA is "not ripe for review before this Court").

## III. CONCLUSION

Consequently, because the IJ's adverse credibility finding is supported by substantial evidence and this finding precludes Korir from meeting her burden of proof for withholding of removal or protection under the CAT, we **DENY** Korir's petition for review of the BIA's decision.