NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0400n.06

No. 18-4136

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JACQUELINE PATRICIA RUBIO-MAURICIO, )
)
Petitioner, )
)
v. )
)
WILLIAM P. BARR, Attorney General, )
)
Respondent. )
)

FILED
Aug 02, 2019
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS

Before: ROGERS, BUSH, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. After the Department of Homeland Security (DHS) began removal proceedings against her, Jacqueline Patricia Rubio-Mauricio sought asylum, withholding of removal, and protection under the Convention Against Torture. An immigration judge (IJ) found Rubio-Mauricio not credible after she admitted lying during her credible-fear interview. The IJ denied relief and ordered Rubio-Mauricio removed to El Salvador. The Board of Immigration Appeals (BIA) affirmed. Because substantial evidence supports the adverse credibility determination, we DENY Rubio-Mauricio's petition for review.

I.

Rubio-Mauricio is a citizen of El Salvador. She tried to enter the United States in 2016 without proper documentation. Shortly after her attempted entry, Rubio-Mauricio met with a DHS asylum officer for a credible-fear interview. At the interview, Rubio-Mauricio testified under oath that "two MS gang members grabbed me from the street and took me to the woods where there

were two police officers waiting. The police officer pointed a gun at me and subjected me to beatings. They undressed me and one of the police officers and one of the gang members raped me." She named the officers as "Martin and [H]ernandez." She further testified that she reported the incident to the police but that the police did nothing about it. Based on this testimony, the asylum officer found a credible fear of torture.

DHS initiated removal proceedings against Rubio-Mauricio. She conceded removability but sought asylum, withholding of removal, and protection under the Convention Against Torture. Before the IJ, Rubio-Mauricio admitted that she had lied during her credible-fear interview—she had not been raped by police officers or gang members. She said that her former attorney had told her to lie. The real story, according to Rubio-Mauricio, was that MS gang members murdered her cousin in 2012. The police arrested three people for her cousin's murder, all of whom went to prison. Then in 2016, MS gang members began harassing and threatening Rubio-Mauricio. She testified that, during the first instance, "three men grabbed me, they began to touch me and they had a knife. And they told me that I had to be their girlfriend and that if I wasn't, that they would kill me." She escaped but did not report the incident to the police because "the authorities in my country do not do anything about it." Another similar incident occurred a week later, followed two days later by a third. According to Rubio-Mauricio, all three gang members had knives during the third attack and tried to rape her. She defended herself forcibly and was able to escape. She never told the police about any of the incidents and instead left for the United States shortly after the third.

Rubio-Mauricio testified that, when she returned home after all three attacks, her aunt was present and, on some occasions, so were her uncle and cousins. She "told all of them every time it happened, every time I would get to the house scared, disheveled, I would tell all of them what

had happened." She admitted that, while her aunt and cousins can write, none provided a letter of support of her asylum claim. Rubio-Mauricio said that she "didn't think of asking them for them" but acknowledged that such letters "could have helped" the IJ understand what happened. Rubio-Mauricio did, however, present country conditions reports for El Salvador and evidence to corroborate the deaths of her cousin and another individual.

Based on the material discrepancies between Rubio-Mauricio's testimony at the credible-fear interview and her testimony before the IJ, the IJ found Rubio-Mauricio not credible. The IJ acknowledged that Rubio-Mauricio "could have overcome the lack of credibility finding by the presentation of corroborating evidence which was readily available from her aunt, and her two cousins who are old enough and who do read and write," but she failed to provide such evidence. The IJ thus concluded that Rubio-Mauricio had failed to meet her burden of establishing entitlement to asylum, withholding of removal, or protection under the Convention Against Torture. The IJ nonetheless addressed the merits of Rubio-Mauricio's claims and determined that, even if Rubio-Mauricio had been credible, she still would not have met her burden of establishing entitlement to the forms of relief she sought. The IJ ordered Rubio-Mauricio removed to El Salvador.

Rubio-Mauricio appealed to the BIA, which "discern[ed] no clear error in the [IJ's] adverse credibility finding, which is based on material inconsistencies between the respondent's testimony and her credible fear interview." The BIA disagreed with Rubio-Mauricio that the IJ should have granted her a continuance to obtain the corroborating evidence, noting that Rubio-Mauricio had never asked that the IJ grant one; and the BIA declined to grant a continuance itself because Rubio-Mauricio had "not meaningfully argued on appeal that she ha[d] established 'good cause' for a continuance." Rubio-Mauricio now petitions this court for review.

II.

To obtain relief on appeal, Rubio-Mauricio must first show error in the IJ's adverse credibility finding. An adverse credibility finding is usually fatal to an applicant's ability to prove entitlement to asylum, withholding of removal, or protection under the Convention Against Torture. *El-Moussa v. Holder*, 569 F.3d 250, 256–57 (6th Cir. 2009); *see also Korir v. Sessions*, 700 F. App'x 514, 519 (6th Cir. 2017) ("[I]f the IJ finds that an applicant is incredible, and there is no independent persuasive evidence, this 'necessarily disposes' of his application [for relief from removal]." (quoting *Slyusar v. Holder*, 740 F.3d 1068, 1074 (6th Cir. 2014))). And Rubio-Mauricio must overcome the deferential, substantial evidence standard we afford credibility determinations. *See El-Moussa*, 569 F.3d at 255. We must treat the credibility determination as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* at 256 (quoting 8 U.S.C. § 1252(b)(4)(B)).

There is no dispute that Rubio-Mauricio lied to the asylum officer during the credible-fear interview, despite being placed under oath. When the asylum officer summarized her fabricated story near the end of the credible-fear interview, she affirmed that the summary was accurate. Before the IJ, Rubio-Mauricio acknowledged that she knew what it meant to be placed under oath and that the asylum officer told her the importance of telling the truth. But she nonetheless decided to lie due to her "fear of going back to [her] country." Though Rubio-Mauricio now claims that her first attorney encouraged her to lie, and though she pivoted before the IJ and recanted her false testimony, we cannot say that any reasonable adjudicator would be *compelled* to conclude that Rubio-Mauricio's second story was credible. *See Sai Hua Liu v. Gonzales*, 239 F. App'x 687, 689 (6th Cir. 2007) ("Filing a knowingly false asylum application casts a serious shadow on an applicant's overall credibility. While applicants should be encouraged to recant false statements

and withdraw false applications, the agency is not required to overlook such falsities in making its ultimate determination.").

Rubio-Mauricio could have provided corroborating evidence from her aunt and cousins, but she did not. "An IJ or the BIA may find a petitioner's uncorroborated testimony sufficient to justify withholding of removal if the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account." *Gaye v. Lynch*, 788 F.3d 519, 528 (6th Cir. 2015) (quotation marks and citation omitted). Here, however, Rubio-Mauricio's testimony was not consistent, and so the IJ and BIA were justified in deeming her uncorroborated testimony not credible.

Rubio-Mauricio contends that the IJ should have granted a brief continuance to allow her to obtain corroborating evidence. She concedes that she never asked for a continuance but argues that the IJ should have granted one sua sponte. We will not reverse the IJ or the BIA on this basis. Though the IJ would have been within her rights to grant a continuance sua sponte, Rubio-Mauricio acknowledges on appeal that, under this circuit's caselaw, the IJ would not have been required to grant a continuance to allow her to obtain corroborating evidence, even if she had asked for one. *See Gaye*, 788 F.3d at 530 ("[F]ederal law does not entitle illegal aliens to notice from the Immigration Court as to what sort of evidence the alien must produce to carry his burden.").[1] It follows, a fortiori, that under this circuit's caselaw the IJ could not have committed reversible error by failing to grant a continuance sua sponte.

---

[1] Rubio-Mauricio notes that the Third Circuit requires the IJ to give notice of what corroboration will be expected and an opportunity for the petitioner to secure and present such evidence. *Saravia v. Att'y Gen.*, 905 F.3d 729, 737–38 (3d Cir. 2018). But our court expressly rejected that reading of the REAL ID Act in *Gaye*. *Gaye*, 788 F.3d at 529–30. We are bound to follow our holding in *Gaye*. *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).

Given the material discrepancies between her testimony at the credible-fear interview and her testimony before the IJ, we cannot say that any reasonable adjudicator would have been compelled to find Rubio-Mauricio credible. Substantial evidence supports the adverse credibility determination, and her claims for relief from removal, therefore, fail. *El-Moussa*, 569 F.3d at 256–57.[2]

* * *

We DENY Rubio-Mauricio's petition for review.

---

[2] Rubio-Mauricio briefly argues that her "due process rights, as a victim of attempted rape and sexual abuse, were violated when the IJ did not consider what her mental and emotional state was when she was detained by DHS." She claims the IJ erred by not considering her reasons for lying to the asylum officer. Rubio-Mauricio offers no caselaw to support her argument that such a failure by the IJ would amount to a due process violation. In any event, there is no factual predicate for Rubio-Mauricio's claim; both the IJ and the BIA considered Rubio-Mauricio's reasons for lying to the asylum officer.