**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 18a0362n.06**

**No. 17-3041**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

MERLENI MARTINEZ-MARTINEZ, and ATHAN   )
SAMUEL ESPINOZA-MARTINEZ,              )
                                    )
     Petitioners,                    )
                                    )
          v.                       )
                                    )
JEFFERSON B. SESSIONS, III, Attorney General,   )
                                    )
     Respondent.                  )
                                    )

**FILED**
Jul 24, 2018
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF IMMIGRATION APPEALS

---

**BEFORE: MERRITT, WHITE and DONALD, Circuit Judges.**

**WHITE, Circuit Judge.** Petitioners, Merleni Martinez-Martinez and her minor son Athan Samuels Espinoza-Martinez, citizens of Honduras, seek review of the Board of Immigration Appeals ("BIA") order dismissing their appeal of an immigration judge's decision denying Martinez-Martinez's applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Petitioners argue that the BIA erred in finding (1) no requisite nexus between Martinez-Martinez's membership in a particular social group and any past or future harm, and (2) that Petitioners were able to safely relocate within Honduras. We disagree and **DENY** the petition for review.

## I.    Background

Petitioners entered the United States without inspection on or about June 23, 2014. On June 25, 2014, the Department of Homeland Security initiated proceedings against Petitioners by issuing Notices to Appear that charged them with removability as aliens present in the United

States without being admitted or paroled, in violation of the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i) (2012). At a June 9, 2015, hearing held before the immigration judge ("IJ"), Martinez-Martinez conceded that she and her son were present in the United States without permission, and the IJ found them removable.

On July 7, 2015, through counsel, Martinez-Martinez filed an application for asylum, withholding of removal, and CAT protection, with her son as a derivative beneficiary. [Martinez-Martinez's claim for relief was predicated on past harm and fear of future harm by her husband in Honduras. In explaining her past experiences and fear of future harm in her written application, Martinez-Martinez highlighted her husband's involvement with drug traffickers:

> My husband [] worked with narcotic traffickers in Honduras. After the birth of our son in 2009, he began to pressure me to also work with the traffickers. When I refused, he began to beat me and on more than one occasion he threatened to kill me. When I tried to leave him and go to stay with other family members, he said he and his gang would find me in Honduras and he would kill me and our son Athan.

[PID 340].

### A. Proceedings Before the Immigration Judge

On March 23, 2016, the IJ held a hearing on the applications for asylum, withholding of removal, and CAT protection. Martinez-Martinez testified that before coming to the United States she lived in San Pedro Sula, Honduras, with her husband and their four children. She testified that she left Honduras because of her husband's abuse and threats of violence; that her husband had been physically and verbally abusive to her through much of their marriage; that he threatened to kill her if she divorced him; and that he became increasingly abusive towards her and their children after he began working as a bodyguard for "very important people," who Martinez-Martinez later learned were drug traffickers.

Martinez-Martinez testified that when she confronted her husband about his working for drug traffickers, her husband grabbed her, pushed her against the wall, and threatened her that if she told anyone or contacted the police, "you will die. And your family will die." [R. 154]. She did not report the incident to the police because she feared retribution from her husband and believed the Honduran police were corrupt.

Shortly after, near the end of 2013, Martinez-Martinez decided to leave her husband. She and her two sons[1] left to stay with her parents in Mezapa, approximately two hours from San Pedro Sula, and for a time also stayed with her sister. They stayed in Mezapa for several months. Martinez-Martinez's husband called Martinez-Martinez and her sister and threatened them, but Martinez-Martinez did not see her husband while staying in Mezapa. Martinez-Martinez's husband sold the family home and she does not know where he is currently living.

Ultimately, Martinez-Martinez decided that she would be safest if she left Honduras, so she left Honduras with her youngest son on June 6, 2014. Martinez-Martinez's other son remained in Honduras with her sister. Martinez-Martinez and Athan travelled through Guatemala and Mexico before arriving in the United States on June 23, 2014. They were arrested immediately. Pending removal proceedings, they relocated to Detroit, where they currently live with Martinez-Martinez's brother. After relocating within the United States, Martinez-Martinez became pregnant and gave birth to a daughter in October 2015. The child's father does not live with them.

In addition to her testimony, Martinez-Martinez submitted a psychological evaluation, which indicated she suffered from psychological trauma due to physical and emotion abuse from her husband. She also submitted the State Department's 2014 Country Report on Human Rights Practices in Honduras, reports and articles on the prevalence of violence against women and

---

[1] Martinez-Martinez's daughters were married and no longer living at home.

domestic violence in Honduras, and an article on general violence in her hometown of San Pedro Sula.

On March 29, 2016, the IJ denied Martinez-Martinez's applications for asylum, withholding of removal, and CAT protection. The IJ found that Martinez-Martinez's proposed particular social group of "married women in Honduras who are unable to leave their relationship" was cognizable under the INA, relying on *Matter of A-R-C-G-*, 26 I. & N. Dec. 388 (BIA 2014).[2] Nevertheless, the IJ concluded that Martinez-Martinez had failed to establish a nexus between her membership in her proposed social group and her claim of past and future persecution.

The IJ noted that Martinez-Martinez testified that her husband beat her because he did not want her to reveal that he was in the drug business, and also noted that Martinez-Martinez was in fact able to leave her husband and stayed with her sister and parents for an extended period of time in a town two hours away. The IJ also reasoned that Martinez-Martinez never saw her husband again and that she was able to move on from her marriage as demonstrated by her having a child from another relationship. Finally, the IJ noted that her children who remained in Honduras had faced no harm at the hands of her husband. Alternatively, the IJ found that the government had adequately demonstrated that Martinez-Martinez could reasonably relocate within Honduras to avoid future persecution.

Because the IJ found Martinez-Martinez had not demonstrated eligibility for asylum, the IJ concluded that she was necessarily unable to meet the higher burden required to warrant withholding of removal. Similarly, the IJ determined that Martinez-Martinez was ineligible for

---

[2] After this case was submitted, the Attorney General overruled *Matter of A-R-C-G-*. *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018).

CAT protection because "[s]he did not testify about any torture or abuse by any government official, nor did they acquiesce in any abuse by her husband." [PID 42].

## B. Proceedings Before the BIA

Martinez-Martinez appealed, and the BIA affirmed the IJ's denial of her applications and dismissed the appeal, concluding that Martinez-Martinez had "not demonstrated that her membership in a particular social group or any other protected ground under the [INA] was or would be at least one central reason for any harm she encountered or future harm that she fears." [PID 4]. The BIA also found that Martinez-Martinez had "not shown that she would be unable to avoid being harmed by her husband by relocating within Honduras and that under all the circumstances it would be unreasonable to expect her to do so." [*Id.*]. Accordingly, the BIA agreed with the IJ that Martinez-Martinez failed to demonstrate a well-founded fear of future persecution and thus was ineligible for asylum or withholding of removal.

Petitioners filed this Petition for Review together with a Motion to Stay Removal, which was denied. Petitioners did not appeal the determination that they are ineligible for relief under the CAT.

## II. Standard of Review

Where the BIA reviews the IJ's decision and issues a separate opinion, rather than summarily affirming the IJ's decision, we review the BIA's decision as the final agency determination. *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007). To the extent the BIA adopted the IJ's reasoning, however, this Court also reviews the IJ's decision. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (citing *Patel v. Gonzales*, 470 F.3d 216, 218 (6th Cir. 2006)).

We review both the IJ's and the BIA's factual findings under the deferential substantial-evidence standard, *Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007), and "cannot reverse

such findings simply because we would have decided them differently." *Khalili*, 557 F.3d at 435 (citing *Gishta v. Gonzales*, 404 F.3d 972, 978 (6th Cir. 2005)). "These findings 'are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting *Gishta*, 404 F.3d at 978 (6th Cir. 2005)).

## III. Analysis

Petitioners advance two arguments on appeal. First, Petitioners argue that a sufficient nexus exists between Martinez-Martinez's membership in a particular social group and the persecution she suffered. Second, Petitioners contend that the government did not meet its burden in proving that safe relocation with Honduras was reasonable.

Under the INA, an asylum applicant must establish that she is a "refugee," which is defined as one "who is unable or unwilling to return to . . . [her home country] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). A particular social group is "a group of persons all of whom share a common immutable . . . [and] fundamental characteristic that either cannot be changed or should not be required to be changed because it is fundamental to the members' individual identities or consciences." *Khozhaynova v. Holder*, 641 F.3d 187, 195 (6th Cir. 2011).

To establish past persecution, the applicant must show harm rising to the level of persecution on account of a statutorily enumerated ground that is committed by the government or forces that the government is unable or unwilling to control. 8 C.F.R. § 1208.13(b)(1); *Khalili*, 557 F.3d at 436. Where the applicant establishes past persecution, there is a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1). Absent past persecution, an applicant may establish a well-founded fear of future persecution by demonstrating

a reasonable possibility of suffering persecution on account of a protected ground. *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004). We have recognized that "[a] well-founded fear of persecution [] has both a subjective and an objective component: an alien must actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an 'objective situation' under which his fear can be deemed reasonable." *Id.* (citation omitted).

Here, the IJ found, and the BIA agreed, that Martinez-Martinez's application for asylum failed because she failed to establish a sufficient nexus between her membership in a particular social group, "married women in Honduras who are unable to leave their relationship," and the harm she endured and fears. We are somewhat troubled by the IJ's and BIA's failure to explain why Martinez-Martinez's testimony that some of her husband's violence was precipitated by her accusations that he was involved in gang activity, and by his fear that she might disclose this activity, negated a nexus between her membership in the social group "married women in Honduras who are unable to leave their relationship" and the domestic violence and threats she suffered. *But see Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018).

Still, the finding that she was in fact able to safely leave her husband and live in another village with her sister and parents is amply supported. We would not agree that every woman who is able to escape her husband thereby removes herself from the social group of women who are unable to leave their relationship, or thereby severs the nexus between her group and the persecution she suffers. But in this case, there was substantial evidence from which the IJ and BIA could conclude that the violence and threats of violence were not sufficiently linked to Martinez-Martinez being unable to leave her husband because the facts demonstrated an ability to safely do so. The IJ and BIA were free to balance Martinez-Martinez's account of the threats her husband made while she was living with her sister against the fact that she never saw her husband after she

left the home, and the testimony does not compel a finding that she was facing persecution by her husband based on a protected ground.

Alternatively, the IJ found that the DHS met its burden of showing that Martinez-Martinez could relocate within Honduras and that relocation was not unreasonable. The BIA affirmed, finding that Martinez-Martinez failed to show that she would be unable to avoid being harmed by her husband by relocating within Honduras and that under all the circumstances it would be unreasonable to expect her to do so. An applicant does not have a well-founded fear of persecution if she "could avoid future persecution by relocating to another part of [her] [home] country . . . and under all the circumstances, it would be reasonable to expect [her] to do so." 8 C.F.R. § 1208.13(b)(1)(i)(B); *INS v. Ventura*, 537 U.S. 12, 18 (2002) ("[A]n individual who can relocate safely within his home country ordinarily cannot qualify for asylum here."). Because the IJ and BIA found Martinez-Martinez had not established past persecution on account of her membership in her proposed social group, she bore the burden of establishing that it would not be reasonable for her to relocate. 8 C.F.R. § 1208.13(b)(3)(i). Nevertheless, the IJ placed the burden on the DHS and found that it had been met.

In determining the reasonableness of internal relocation, the agency may consider "whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties." 8 C.F.R. § 208.13(b)(3); *Dieng v. Holder*, 698 F.3d 866, 872 (6th Cir. 2012).

Here, the BIA reasoned:

> The respondent testified that she lived in Honduras with her relatives for several months after leaving the house she lived in with her husband. She testified that she did not know her husband's current location but that he was no longer in the house they had shared. We

> acknowledge the respondent's contention on appeal that her husband called her and her sister after she left him. While she answered in the affirmative when asked whether he threatened her family and she testified that he was angry, the respondent did not provide more details about these threats and has not shown that she could not avoid future harm from her husband by internally relocating within Honduras and that it would be unreasonable to expect her to do so.

[PID 4] (internal record citations omitted).

Substantial evidence supports the BIA's conclusion.[3] Although Martinez-Martinez submitted reports of widespread violence against women in Honduras, she presented no evidence of violence against her or her children since she left the home she shared with her husband in 2013. The record does not compel a different conclusion. *See Dieng*, 698 F.3d at 872; *Marikasi v. Lynch*, 840 F.3d 281, 291 (6th Cir. 2016).

Since Martinez-Martinez has failed to meet her burden of proving eligibility for asylum, she necessarily fails to meet the more stringent burden required for withholding of removal. *Lin v. Holder*, 565 F.3d 971, 975 (6th Cir. 2009).

### IV. Conclusion

Because there is substantial evidence in the record supporting the IJ's and BIA's decisions, we **DENY** the petition for review.

---

[3] The dissent notes that Honduras was designated for Temporary Protected Status ("TPS") in 1999. Although the designation was extended until very recently, Martinez-Martinez was never eligible for TPS because she was not continuously present in the United States since January 5, 1999. *See* 8 U.S.C. § 1254a(c); "Designation of Honduras Under Temporary Protected Status," 64 Fed. Reg. 524-02, 1999 WL 1703 (1999).

**MERRITT, Circuit Judge, dissenting.** I agree with the majority that it is troubling that the IJ and the BIA failed to explain why Martinez-Martinez's testimony that some of her husband's violence was escalated by her accusations that he was involved in drug trafficking, and by his fear that she might disclose this activity, negated a nexus between her membership in her proposed social group and the abuse she suffered. To be sure, the BIA need not "list every possible positive and negative factor in its decision," *Scorteanu v. INS*, 339 F.3d 407, 412 (6th Cir. 2003) (quoting *Rodriguez-Rivera v. INS*, 993 F.2d 169, 170–71 (8th Cir. 1993); it is, however, obligated to "announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted," *id.* (quoting *Osuchukwu v. INS*, 744 F.2d 1136, 1142–43 (5th Cir. 1984). I believe that a better solution to this problem would be to not overlook it, but to remand it back to the BIA to reconsider and articulate its reasoning.

Turning to the issue of reasonable relocation, the BIA found that Martinez-Martinez had not shown that she could not avoid future harm from her husband by reasonably relocating within Honduras. However, Martinez-Martinez's husband called her and her sister and threatened them while Martinez-Martinez was staying at her sister's house. These threats convinced Martinez-Martinez that she was not safe even *after* she attempted to internally relocate, and prompted her to flee the country with her son while pregnant. Martinez-Martinez's husband may harm her because she went on to have a child with another man after she left their patriarchal, abusive relationship. Additionally, the United States has recognized the deteriorating conditions in Honduras since Hurricane Mitch devastated the country and caused economic consequences that led to a rise in violence. It accordingly designated Honduras as a Temporary Protected Status country in 1999. The recent migrant caravan, as widely reported in the *New York Times* and other publications, would indicate that the conditions in Honduras have not improved and the country report confirms

that widespread domestic violence remains.  I would remand this case to have the BIA consider

that background along with the previously-mentioned factors.