NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0228n.06

Case No. 20-3284

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 29, 2021
DEBORAH S. HUNT, Clerk

MARLON ANDRES ABARCA-FUENTES,

        Petitioner,

v.

MERRICK GARLAND, Attorney General,

        Respondent.

ON PETITION FOR REVIEW
OF A FINAL ORDER OF THE
BOARD OF IMMIGRATION
APPEALS

BEFORE:    CLAY, SUTTON, and McKEAGUE, Circuit Judges.

**CLAY, Circuit Judge.** Pursuant to 8 U.S.C. § 1252(a), Petitioner Marlon Andres Abarca-Fuentes seeks review of an order by the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal, and protection under the Convention against Torture ("CAT"). For the reasons set forth below, Petitioner's application is denied.

## I. BACKGROUND

### A. Factual History

Marlon Andres Abarca-Fuentes is a twenty-year-old citizen of El Salvador. Until 2014, he lived in El Salvador with his aunt, who subsequently migrated to Costa Rica. His mother lives in the United States, without legal status, with two of his siblings, and he has no remaining relatives in El Salvador. Marlon has moderate mental retardation and lumbar scoliosis. Before migrating to the United States, he attended a special-education school. He was often teased in school and by

neighbors in his community because of his disabilities. Starting in 2012, when he was 12 years old, an MS-13 gang attempted to recruit him. He rejected their requests and told them he wanted to "serve God." At one point, a gang member referred to him as "Chuckie," a reference to a fictional character from horror movies. The gang threatened to kill his aunt if he did not join their ranks. Marlon, accompanied by his aunt, reported the gang to the police but they never resolved the issue. The first person who tried to recruit Marlon was eventually sent to jail for unspecified reasons. But the gang's recruiting efforts continued. Feeling pressured, Marlon contemplated killing himself twice because of the gang recruitment. In December 2013, he bought rat poison he planned to ingest, but stated he heard God's voice telling him not to do so. In April 2014, he tried to stab himself in the stomach but stopped himself after changing his mind. On May 15, 2014, Marlon entered the United States through the Texas border as an unaccompanied minor. Marlon believes the gangs will kill him if he ever returns to El Salvador and has threatened to kill himself before returning to his home country.

## B. Procedural History

Immigration agents apprehended Marlon shortly after his arrival in the United States, and on May 16, 2014, charged him with removability pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). After being released from custody on June 4, 2014, he went to live with his mother in Michigan. His immigration case was subsequently transferred to a Detroit immigration court. On September 18, 2014, Marlon conceded to removability and admitted to the allegations in his Notice to Appear but petitioned for asylum, withholding of removal, and protection under the CAT.

On April 30, 2018, the IJ denied Marlon's applications to stay in the United States. Upon review of Marlon's asylum claim, the IJ found that he had not suffered past persecution or established a well-founded fear of future persecution. Despite being recruited by gangs and being

made fun of for his disabilities, the IJ stated that the incidents did not rise to the level of persecution, especially since Marlon had not experienced physical harm. Additionally, the IJ stated that Marlon failed to establish an objective basis for his fear that gang members would kill him if he were to return to El Salvador. As part of his application, Marlon argued that he belonged to the particular social group of "young males age 14 to 21 with no family in El Salvador and who have noticeable physical and mental disabilities." The IJ stated this group was not cognizable because his group did not meet the social visibility requirement. The IJ determined that the group Marlon claimed to be a part of was too broadly defined. As it pertained to Marlon's disabilities, the IJ reasoned that he had been unable to show a nexus between the violence in El Salvador and his status as a mentally challenged person who refused to join a gang. Because the IJ rejected his asylum claim, the IJ also determined he failed to meet his burden for withholding of removal, a claim with a higher burden of proof than asylum. The IJ additionally denied his claim for protection under the CAT, because he did not establish a particularized threat of torture by Salvadoran state actors. Thereafter, Marlon submitted his petition to the Board of Immigration Appeals, who affirmed the IJ's decision to deny him relief from removability. In that decision, the BIA agreed with the IJ that persons who resist gang recruitment do not constitute a particular social group and found no clear error in the IJ's determination that no nexus existed between gang violence in El Salvador and Marlon's disabilities. This petition followed.

## II.  DISCUSSION

### 1.  Standard of Review

We review the BIA's findings of fact for "substantial evidence" whereas "questions of law [will be] reviewed *de novo*." *Marikasi v. Lynch*, 840 F.3d 281, 287 (6th Cir. 2016) (emphasis added) (quoting *Abdurakhmanov v. Holder*, 735 F.3d 341, 345 (6th Cir. 2012)). We will "defer to

the agency's findings of fact if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Guzman-Vazquez v. Barr*, 959 F.3d 253, 259 (6th Cir. 2020) (quoting *Abdurakhmanov*, 735 F.3d at 345). Under that standard, "[w]e may not reverse such findings simply because we would have decided them differently." *Al-Ghorbani v. Holder*, 585 F.3d 980, 991 (6th Cir. 2009). The administrative findings of fact are conclusive "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Singh v. Gonzales*, 451 F.3d 400, 403 (6th Cir. 2006) (quoting 8 U.S.C. § 1252(b)(4)(B)). Whenever the BIA "issues a separate opinion, rather than summarily affirming the [IJ's] decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). "To the extent that the BIA has adopted the IJ's reasoning . . . we also review the IJ's decision." *Al-Ghorbani*, 585 F.3d at 991.

## 2. Relevant Legal Principles

Under the Immigration and Nationality Act ("INA"), the United States has discretion to grant asylum to persons considered to be refugees. 8 U.S.C. § 1158(b)(1)(A). The burden is on the asylum applicant to show that he or she is a refugee. *Id.* § 1158(b)(1)(B)(i). To determine whether someone qualifies as a refugee, an applicant must show that he or she is "unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of" his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). A "nexus" exists that satisfies the statute when the applicant shows that at least one of the five characteristics listed above "was or will be at least one central reason for [his or her] persecuti[on]." 8 U.S.C. § 1158(b)(1)(B)(i).

Under 8 U.S.C. § 1158, a "member of a particular social group" will have membership in a group with immutability, particularity, and social distinction within the society in question. *Betancourt-Aplicano v. Sessions*, 747 F. App'x 279, 282 (6th Cir. 2018). To qualify as a member of an immutable group, the applicant will have membership in a "group [that] either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Umana-Ramos v. Holder*, 724 F.3d 667, 671 (6th Cir. 2013) (quoting *Castellano-Chacon v. INS*, 341 F.3d 533, 547 (6th Cir. 2003), *abrogated on other grounds by Almuhtaseb v. Gonzalez*, 453 F.3d 743, 748 (6th Cir. 2006)). Particularity refers to "whether the proposed group can accurately be described in a manner sufficiently distinct that the group would be recognized, in the society in question, as a discrete class of persons.'" *Al-Ghorbani*, 585 F.3d at 994 (quoting *Matter of S–E–G–*, 24 I. & N. Dec. 579, 584 (B.I.A. 2008)). And social distinction requires the "set of individuals with the shared characteristic be 'perceived as a group by society.'" *Umana-Ramos*, 724 F.3d at 671 (quoting *S–E–G–*, 24 I. & N. Dec. at 586).

Persecution does not include every type of treatment society regards as unfair, unjust, unlawful, or unconstitutional. *Marikasi*, 840 F.3d at 288. Rather, persecution is defined as a "threat to the life or freedom of, or the infliction of suffering or harm upon, those who differ in a way regarded as offensive." *Thap v. Mukasey*, 544 F.3d 674, 681 (6th Cir. 2008) (quoting *Matter of Acosta*, 19 I & N Dec. 211, 222-23 (B.I.A. 1985)). To establish a well-founded fear of persecution, the application "cannot rely on speculative conclusions or mere assertions of fear of possible persecution, but instead must offer reasonably specific information showing a real threat of individual persecution." *Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004) (internal quotations omitted). The applicant must then show persecution could not be avoided by relocating to another part of the country. 8 C.F.R. § 1208.13(b)(2)(ii) (2016). In addition, if the application alleges

5

persecution because of non-government actors, the applicant must show that the government was unable or unwilling to control the persecutors. *K.H. v. Barr*, 920 F.3d 470, 475 (6th Cir. 2019).

To be eligible for withholding of removal, a petitioner must establish that his or her "life or freedom would be threatened in that country because of [his or her] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The applicant "must establish a 'clear probability of persecution,' meaning that 'it is more likely than not that [he or she] would be subject to persecution.'" *Al-Ghorbani*, 585 F.3d at 993-94 (quoting *INS v. Stevic*, 467 U.S. 407, 413, 424 (1984)). A few isolated incidents of verbal harassment or intimidation do not qualify as "persecution," particularly when those incidents are "unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. INS*, 146 F. 3d 384, 390 (6th Cir. 1998). While the applicant bears the initial burden of proof, once that burden is satisfied, withholding of removal is mandatory and automatic. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 444 (1987).

To be eligible for relief under the CAT, an applicant must prove that "it is more likely than not that [he] would be tortured if removed to" El Salvador. 8 C. F. R. § 1208.16(c)(2); *see also Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1155 (6th Cir. 2010). Torture is considered an extreme form of cruel and inhuman treatment and includes any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted to extract information, punish, intimidate, coerce, or otherwise discriminate, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity. *See* 8 C. F. R. § 1208.18(a)(1). In determining whether to grant relief, this court reviews numerous factors including whether there is 1) evidence of past torture inflicted upon the applicant; 2) evidence that the applicant could relocate to a part of the country of removal where he or she is

not likely to be tortured; 3) evidence of gross, flagrant or mass violations of human rights within the country of removal; and 4) other relevant information of the conditions in the country of removal. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 751 (6th Cir. 2006), *abrogated on other grounds by Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062 (2020). Further, an applicant must demonstrate he faces a particularized threat of torture. *Id.* at 751.

3. **Petitioner's Claims for Asylum, Withholding from Removal, and Protection under the CAT**

Substantial evidence supports the Board of Immigration Appeals' decision to deny Marlon's petition for asylum, withholding of removal, and protection under the CAT. While the IJ found Petitioner credible, she ruled that none of the incidents Petitioner had experienced rose to the level of persecution. In particular, she found the fact that he was never physically harmed and only suffered ridicule from neighbors for wearing orthopedic shoes to be insufficient to qualify as persecution. Additionally, the IJ found that he was not a member of a cognizable group, after Marlon argued his particular social group was "young males age 14 to 21 with no family in El Salvador who have noticeable mental and physical disabilities." In citing *Castro v. Holder*, 530 F. App'x 513 (6th Cir. 2013), the IJ reasoned that being the target of gang recruitment was too broad of a category to meet the social visibility requirement under the Immigration and Nationality Act. Specifically, the IJ referred to a record that established "that the gangs indiscriminately target most if not all segments of society as opposed to the persecution of a specific group." (AR 92.)

Petitioner argues that the IJ rejected his claim that individuals who have mental and disabilities can be a cognizable social group. He presented two unpublished opinions from the BIA that held that persons with mental disabilities qualified as a particular social group. *See In re L-A-A-,* AXXX XXX 875 (B.I.A. April 3, 2018); *In re J-M-O-M-*, AXXX XXX 580 (B.I.A. May 16, 2018). Petitioner further raises that the IJ erred because she analyzed his claim as a typical gang

case after calling his argument about being more vulnerable to gang recruitment because of his disabilities "a distinction without a difference." (AR 93.) But in her analysis, the IJ explicitly analyzed Marlon's claim that he was entitled to asylum because of his physical and mental disabilities. In taking his disabilities into consideration, the IJ did not find any evidence in the record to establish that he was recruited into gangs because of mental and physical difficulties. Rather, the record suggested the gangs had targeted him, as well as other young men in El Salvador, indiscriminately. Contrary to his assertion, the IJ did not rule that individuals who have mental and physical difficulties were not a cognizable social group, but rather, that Marlon had failed to demonstrate the requisite nexus between his disabilities and the gang recruitment he experienced. Accordingly, the IJ ruled "respondent is unfortunately subject to the same gang problem that other El Salvadorans suffer, as opposed to being targeted because of his membership in a particular social group." (AR 93.) And because his asylum claim failed, he additionally had not met the higher burden to prove his claim for withholding of removal. In turning to Petitioner's claim for protection under the CAT, the IJ found that Marlon had not shown that the Salvadoran government sought to torture him or willfully accepted torturous conduct of private actors. Her rationale for this was that Marlon "presented no evidence that he has ever been arrested, detained, or abused by Salvadoran officials, and he did not allege that he would be harmed by any Salvadoran officials in the future." (AR 116.)

Petitioner further argues that the BIA erred by relying on *Matter of A-B-*, 27 I & N Dec. 316, 320 (A.G. 2018) in coming to its conclusion. In *Matter A-B-*, the Attorney General held that being subjected to gang violence alone is insufficient to qualify for asylum. Upon review of the IJ's decision, the BIA expressly noted that the IJ did not rely on *Matter A-B-* in deciding the merits of Marlon's claim, because *Matter of A-B-* was decided after the IJ's ruling in Petitioner's case.

Contrary to Petitioner's assertion, neither the BIA nor the IJ factored *Matter A-B-* into their analysis of whether Petitioner was entitled to relief.

We defer to the BIA's findings because substantial evidence supports its conclusions. Further, we will not reverse "simply because we [c]ould have decided [the facts] differently." *Al-Ghorbani*, 585 F.3d at 991. After review of Petitioner's arguments, we are not "compelled to conclude to the contrary" that he was entitled to relief under the INA. *Singh*, 451 F.3d at 403 (quoting U.S.C. § 1252(b)(4)(B)). While Petitioner argued he held membership in the particular social group of persons living with physical and mental disabilities, he was unable to show a nexus between those traits and the gang recruitment he faced in El Salvador. As the IJ found, Petitioner never experienced any physical harm, and could only point to occasions where he was ridiculed because he wore orthopedic shoes or was called "Chuckie" from a horror movie. (AR 81.) The IJ's decision found this insufficient to rise to the level of persecution, and we find this conclusion reasonable given that persecution does not include every type of treatment society regards as "unfair, unjust, or even unlawful or unconstitutional." *Marikasi*, 840 F.3d at 288 (quoting *Lumaj v. Gonzalez*, 462 F.3d 574, 577 (6th Cir. 2006)). In accordance with that standard for persecution, the BIA's conclusion is supported by substantial evidence. *See id.* at 286-87.

### III. CONCLUSION

For the reasons set forth above, we deny Petitioner's application.